UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JOSIAS SINCHI QUINCHE,<br><br>        Petitioner,<br><br>v.<br><br>DERRICK STAMPER,<br>*Chief Patrol Agent, Houlton Sector,*<br>*U.S. Border Patrol*, et al.<br><br>        Respondents. | )<br>)<br>)<br>)<br>)<br>)   2:25-cv-00559-SDN<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

## I.   Background

Petitioner Josias Sinchi Quinche is an 18-year-old Ecuadorian citizen who entered the United States without inspection on March 12, 2024. *See* ECF No. 1 at 1–2. On March 13, 2024, U.S. Customs and Border Protection ("CBP") initiated removal proceedings against him and issued him a Notice to Appear in immigration court. *Id*. at 2. For a short time, he was placed in the custody of the Office of Refugee Resettlement as an unaccompanied minor. *Id*. On March 28, 2024, he was released to the care of his brother pursuant to his status as an unaccompanied minor. *Id*. He has resided with his brother in Framingham, Massachusetts, since that date and attended Framingham High School. *Id*. He graduated from Framingham High School in June 2025. *Id*. On his counsel's information and belief, he currently is detained in Houlton, Maine.[1] *Id*. at 3.

---

[1] Because Mr. Quinche currently is detained in Maine, I find this Court retains jurisdiction over the habeas matter. *See Ozturk v. Trump*, 777 F. Supp. 3d 26, 35 (D. Mass. 2025) ("[A]s a general matter, a habeas petitioner must file his or her petition in the district of confinement."). And although 8 U.S.C. § 1252(b)(9) limits judicial review in immigration proceedings, it "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process

1

Around November 3, 2025, Mr. Quinche traveled to an unspecified location in Maine to do construction work. *Id.* at 2. Federal agents arrested him on November 6, 2025, while he was traveling back to Massachusetts from Maine. *Id.* Later that evening, Mr. Quinche called his brother to report that he had been arrested but did not know where he was. *Id.* The next day, he called his brother again to specify that he had been moved to Houlton, Maine. *Id.* On November 10, 2025, Mr. Quinche told his brother that he had heard that federal agents were waiting to gather ten detainees to transfer them all to Texas. *Id.*

On November 11, 2025, Mr. Quinche filed a verified petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking, in part, a declaration that his detention is unlawful. ECF No. 1 at 10. The same day, he also filed the instant motion for a temporary restraining order ("TRO"), seeking to enjoin Respondents from transferring him outside of the District of Maine. ECF No. 4. Later that day, I issued an emergency order staying his transfer from Maine for twenty-four hours. ECF No. 3.

In his verified habeas petition, Mr. Quinche argues he is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a) because he is not properly detained or removable under 8 U.S.C. § 1225(b)(1) or (2), or 8 U.S.C. § 1226(c). ECF No. 1 at 4–5. He urges this Court to issue a writ of habeas corpus directing Respondents to release him immediately, or in the alternative, he asks that this Court conduct its own bail hearing pursuant to its inherent authority. *Id.* at 10. If Petitioner's argument is true, mandatory detention without a bond hearing would violate his Fifth Amendment rights to due process. *Id.* at 7–9. In his motion for a TRO, he also urges the Court to enjoin the Government from

---

by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quotation modified).

transferring him outside the jurisdiction while it considers the merits of his habeas petition, in part because transfer would frustrate his access to established counsel. ECF No. 4 at 3–4.

## II. Discussion

In determining whether to grant a motion for a temporary restraining order, I must consider the following four factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

*Calvary Chapel of Bangor v. Mills*, 459 F. Supp. 3d 273, 282 (D. Me. 2020) (alteration in original) (quoting *Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006)). The movant bears the burden of showing the factors weigh in their favor. *Esso*, 445 F.3d at 18. "[I]f the moving party cannot demonstrate that [they are] likely to succeed in [their] quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

### A. Likelihood of Success on the Merits

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V, and applies to noncitizens in immigration proceedings, *Reno v. Flores*, 507 U.S. 292, 306 (1993). Mr. Quinche argues he is being deprived of his due process protections under the Fifth Amendment because he is unable to seek a bond hearing to which he is entitled under section 1226(a) and that the mandatory detention provisions in the statute do not apply to him.

There are four mandatory detention provisions which could be at issue in detention cases such as this one. 8 U.S.C. § 1225(b)(1) is the "expedited removal" provision and mandates detention and immediate removal for a noncitizen who has been in the country for fewer than two years. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (exempting mandatory detention from a noncitizen who "has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"). Second, 8 U.S.C. § 1225(b)(2) is the "arriving [noncitizen]" provision, which mandates detention for those who are deemed to be "seeking admission" to the United States. *See* 8 U.S.C. § 1225(b)(2)(A) ("[I]f the examining immigration officer determines that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding . . . ."). Third, 8 U.S.C. § 1182(d)(5) governs noncitizens who have been "paroled" into the United States at the border and allows for immediate revocation of their parole. *See* 8 U.S.C. § 1182(d)(5)(A) ("[B]ut such parole of such [noncitizen] shall not be regarded as an admission of the [noncitizen] and when the purposes of such parole shall . . . have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled . . . ."). Finally, the Laken Riley Act, as codified at 8 U.S.C. § 1225(c), mandates detention for noncitizens who have been charged or convicted of committing certain enumerated criminal acts. *See* 8 U.S.C. § 1225(c)(1)(E)(ii).

Because I must construe the facts in the verified petition as true, I find at this stage that the four aforementioned mandatory detention provisions likely do not apply. *See Chogllo Chafla v. Scott*, No. 2:25-CV-00437, 2025 WL 2688541 (D. Me. Sept. 22, 2025), at *1 n.2 (construing as true facts derived from "Petitioners' *verified* petitions" (emphasis added)). Mr. Quinche maintains in his verified petition that he is not subject to mandatory

4

detention under either provision in section 1225, that he was not paroled into the country at the border, and that he has not committed a crime that would bring him under the auspices of the Laken Riley Act. *See* ECF No. 1 at 3–4.

If, as articulated in the verified petition, the relevant statutory subdivisions do not apply to Mr. Quinche, then Mr. Quinche's due process rights have been violated and he is likely to succeed in his claim that he is entitled to a bond hearing.

It is undisputed that noncitizens have a liberty interest in their freedom. *See Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))). "To protect that interest, due process requires notice and a hearing, prior to any re-arrest, at which hearing the individual is afforded the opportunity to advance their arguments as to why their release should not be revoked." *Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), at *12, *R&R adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025).

Based on the claims in his verified petition, I conclude that Mr. Quinche has a likelihood of success on his Fifth Amendment claim.

### B. Potential for Irreparable Harm

Mr. Quinche asserts that transfer outside of the District of Maine could strip this Court of jurisdiction and inhibit his right to access counsel, which would constitute irreparable harm. ECF No. 4 at 3–4. I conclude that absent a temporary restraining order, Mr. Quinche is at risk of facing irreparable harm.

### C. Balance of the Equities and Public Interest

"A plaintiff seeking a preliminary injunction must establish that . . . the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The crux of the balance of equities inquiry is whether 'the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" *Grant v. Trial Ct.*, 784 F. Supp. 3d 475, 490 (D. Mass. 2025) (quoting *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)).

It is evident that Petitioner faces a risk of deprivation of his rights if he is entitled to a bond hearing and foreclosed from having one. The harm to the Government is less pronounced. Although the Government has a legitimate interest in the "prompt execution of removal orders," *Hernandez-Lara v. Lyons*, 10 F.4th 19, 32 (1st Cir. 2021), "[t]here is no discernable harm that will come to Respondents by granting Petitioner's requested relief, nor would this Court's ruling interfere with ICE's proper enforcement of U.S. immigration laws," *Francisco T. v. Bondi*, No. 25-CV-03219, 2025 WL 2629839 (D. Minn. Aug. 29, 2025), at *4. Rather, "such unnecessary detention imposes substantial societal costs." *Hernandez-Lara*, 10 F.4th at 33.

The equities here weigh in favor of granting Mr. Quinche an opportunity for his habeas petition to be heard on the merits.

### III. Conclusion

I hereby **ORDER** that the Respondents in this matter are **ENJOINED** from removing Petitioner from the District of Maine pending further order from this Court. Petitioner's motion for a temporary restraining order is **GRANTED**. ECF No. 4.

6

**SO ORDERED.**

Dated this 12th day of November, 2025.

<u>/s/ Stacey D. Neumann</u>
**UNITED STATES DISTRICT JUDGE**
